SEALED

ASJZ/SD/DG USAO 2024R00567

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | CRIMINAL NO. JRR 24-0302 |
| v. | * | |
| | * | (Conspiracy to Defraud the United |
| **ANTWANN RAWLS,** | * | States, 18 U.S.C. § 371; Forfeiture, 18 |
| | * | U.S.C. §§ 981 and 982; 21 U.S.C. § 853 |
| Defendant | * | and 28 U.S.C. § 2461(c)) |
| | * | |

\*\*\*\*\*\*\*

## INFORMATION

### COUNT ONE
(Conspiracy to Defraud the United States)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this information.

### Background and Introduction

1. Defendant **ANTWANN RAWLS** was a government contractor who worked onsite at an agency of the United States Department of Defense, located in Maryland (the "DoD Agency").

2. The United States Department of Defense and other federal agencies regularly purchased information technology ("IT") solutions to satisfy specific operational needs. Such solutions, which consisted of both hardware and software products ("IT Products"), often totaled millions of dollars.

3. In 2018 and 2019, the DoD Agency began the process of building such a solution to update two data centers (the "2019 Data Center Procurement"). The government evaluated its needs, consulted with subject matter experts, and conducted market research. After conducting its

analysis, the government identified products to meet the needs of the 2019 Data Center Procurement and set a total budget of $10 million.

4. To secure the best deal for taxpayers—and to promote free and fair competition—the Department of Defense often runs a bidding process to award contracts. In the case of the 2019 Data Center Procurement, the purpose of the bidding process was to obtain goods at the lowest price possible while meeting specified technical requirements. The Department of Defense expected and required that companies bid competitively and independently for the 2019 Data Center Procurement and by rule obtained two or more bids from eligible bidders prior to purchasing the IT Products.

### Relevant Individuals and Entities

5. VICTOR M. MARQUEZ was a United States citizen residing in the State and District of Maryland. MARQUEZ was the founder and owner of Company 1 and Company 2.

6. **RAWLS** was employed by Company 1. **RAWLS** provided on-site technology support, including by, among other things, building and managing data centers used by the United States government. As part of **RAWLS**' work, he assisted the DoD Agency in assessing equipment procurements and evaluating bids submitted to the Department of Defense.

7. For the 2019 Data Center Procurement, **RAWLS** assisted in developing requirements and conducting market research to assist the DoD Agency in soliciting competitive bids from qualified vendors. **RAWLS** was also tasked by the DoD Agency with obtaining competitive bids from prospective equipment resellers and evaluating each prospective reseller's bid.

8. Co-Conspirator 1 was a United States citizen residing in the Commonwealth of Virginia. Co-Conspirator 1 was a government account representative employed by Company 3.

Company 3 also submitted bids for government procurements and sold IT Products to the United States government.

9. MARQUEZ, along with members of his family and other co-conspirators, managed the operations of Company 1 and Company 2. Company 2 submitted bids for government procurements and sold IT Products to the United States government as a prime contractor. Company 1 was a government contractor that provides on-site services, including consultant work as relevant to IT procurements such as the 2019 Data Center Procurement.

## The Scheme to Defraud

10. From as early as 2018 and continuing through at least as late as May 2019, in the District of Maryland and elsewhere, the Defendant,

**ANTWANN RAWLS,**

and others both known and unknown to the United States Attorney, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud ("Scheme to Defraud"), and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, that is, the Defendant and his Co-conspirators knowingly sought to defraud the U.S. Department of Defense by submitting, via interstate wires, materially false, fraudulent, and misleading bids and certifications and to inflate the amount of money and property obtained as a result of those bids and certifications, which caused economic harm, in violation of Title 18, United States Code, Section 1343.

## The Conspiracy to Execute the Scheme to Defraud

11. From at least as early as 2018 and continuing through at least as late as May 2019, in the District of Maryland and elsewhere, the Defendant,

**ANTWANN RAWLS,**

knowingly and willfully conspired and agreed with MARQUEZ, Co-Conspirator 1, and other co-conspirators known and unknown, to commit wire fraud, that is, to knowingly execute and attempt to execute the Scheme to Defraud through the use of interstate wires, in violation of Title 18, United States Code, Section 1343.

### The Purpose of the Conspiracy and Scheme to Defraud

12.It was the purpose of the Conspiracy and Scheme to Defraud for **RAWLS** and his co-conspirators to fraudulently obtain funds from the Department of Defense for the 2019 Data Center Procurement.

### Manner and Means of the Conspiracy and Scheme to Defraud

13.The manner and means by which the Defendant sought to accomplish the Conspiracy and the Scheme to Defraud included, but were not limited to, the following:

  a. **RAWLS** and his co-conspirators communicated about rigging bids and agreed to rig bids to sell IT Products to the government;

  b. **RAWLS** and his co-conspirators solicited complementary, rigged bids from co-conspirators that were intentionally inflated and not intended to win, despite knowing that the government required two or more independent bids;

  c. **RAWLS** and his co-conspirators coordinated bids on behalf of value-added resellers ("VARs") and Company 3, including through the submission of intentionally noncompetitive "high price third bid[s]";

  d. **RAWLS** and his co-conspirators agreed to prepare and submit one or more bids to sell IT Products to the United States government and various of its agencies and departments to give the appearance of competition when, in fact, the price and other information on each bid or quote submitted had been agreed among the co-

conspirators, despite knowing that the government required two or more independent bids;

e. **RAWLS** and his co-conspirators agreed to prepare and submit, then prepared and submitted, to the United States government bids and quotes to sell IT Products to make it appear to the government that Defendant had competed when, in fact, **RAWLS** and his co-conspirators had arranged in advance which company would win and submitted quotes and bids at artificially determined, non-competitive prices;

f. MARQUEZ received payments for IT Products at artificially determined, non-independent prices, and used proceeds of his nearly $2.25 million in unlawful gains for personal expenses and expenses unrelated to the 2019 Data Center Procurement;

g. MARQUEZ received payment from the government and made wire transfers to co-conspirators of funds paid by the government in exchange for the IT Products solicited in the 2019 Data Center Procurement.

**Overt Acts in Furtherance of the Conspiracy and Scheme to Defraud**

14. In furtherance of the Conspiracy and to accomplish its objects, the following acts were committed in the District of Maryland, and elsewhere:

h. MARQUEZ offered to pay **RAWLS** for his assistance in ensuring MARQUEZ's Company 2 won the 2019 Data Center Procurement;

i. **RAWLS** assisted in developing requirements and conducted market research to assist the DoD Agency in soliciting competitive bids from qualified vendors and did in fact obtain non-competitive competitive bids from prospective equipment resellers;

j. MARQUEZ instructed **RAWLS**, who had access to confidential procurement information, to conceal MARQUEZ's ownership of Company 2 from Department of Defense employees responsible for managing the 2019 Data Center Procurement;

k. On or about January 24, 2019, Co-Conspirator 1 emailed to confirm his intent to submit an intentionally "high price third bid" in response to the 2019 Data Center Procurement: "Also procurement reached out directly to [Company 3] so I will be submitting a high price third bid, is there any easy way to get all of the skus on your quote into my [Company 3 system] without me just copy pasting?"

l. On or about January 24, 2019, Co-Conspirator 1 coordinated the submission of Company 3's 2019 Data Center Procurement bid with MARQUEZ's submission of Company 2's bid: "Hey Vic [i.e., MARQUEZ], Can you let me know when you [sic] bids are submitted, I want to wait for you to submit yours before I submit just to make sure everything is good to go. I'm getting everything prepped on my side now."

m. On or about January 31, 2019, MARQUEZ signed the "Solicitation/Contract/Order for Commercial Items" for the 2019 Data Center Procurement, Contract Nos. H98230-19-C-0123 and -0124, with each contract valued at approximately $4.85 million, on behalf of Company 2, falsely certifying that Company 2 complied with the Certificate of Independent Price Determination;

n. On or about May 7, 2019, MARQUEZ received a wire payment of funds from the United States Government as payment for the 2019 Data Center Procurement;

o. On or about May 9, 2019, MARQUEZ received a second wire payment of funds from the United States Government as payment for the 2019 Data Center Procurement; and

p. On or about May 9, 2019, MARQUEZ initiated a wire payment of funds received from the United States Government as payment for the 2019 Data Center Procurement, from a bank account ending in x1978 in the name of Company 2 to a bank account ending in x1343 in the name of Company 2, but controlled by an executive of Company 3.

18 U.S.C. § 371

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the Defendant that the United States will seek forfeiture as a part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of Defendant's conviction under Count One of this Information.

2. Upon conviction of the offense alleged in Count One of this Information, the Defendant,

**ANTWANN RAWLS,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)9c) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offense.

### Substitute Assets

3. If, as a result of any act or omission of the Defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(b)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

JONATHAN KANTER
Assistant Attorney General

EREK L. BARRON
United States Attorney

_____
MICHAEL M. SAWERS
ZACHARY D. TROTTER
ELIZABETH H. FRENCH
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal Section
450 5th Street, NW
Washington, D.C. 20530

Date: 10/16/2024